IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN ALLEN HESSMER,            )
                               )
      Plaintiff,               )
                               )
v.                             )      Case No. 3:12-cv-590
                               )
BAD GOVERNMENT *et al.*,       )      Judge Campbell
                               )      Magistrate Judge Knowles
      Defendants.              )

## REPORT AND RECOMMENDATION

This is a pro se civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The matter has been referred to the undersigned by District Judge Todd Campbell for case management and all pretrial proceedings pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure.

The first order of business is to conduct the initial review required by 28 U.S.C. § 1915A, which states in pertinent part: "The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *Id.* § 1915A(a). In conducting this review, the court is to identify any cognizable claims and to dismiss the complaint or any portion thereof, prior to service on the defendants, to the extent it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* §

1915A(b).  Applying these standards, I find that the complaint states a colorable claim under § 1983 for retaliatory transfer against defendant "Chief Bryant" in his individual capacity, and recommend that the complaint be served upon that defendant and that this claim be permitted, at this stage, to proceed.  I further recommend that all other claims in the complaint be dismissed, for the reasons set forth herein.

## I.   The Complaint

The plaintiff in this case has filed a 133-page complaint (Complaint, ECF No. 1) along with an additional 40 pages of "addenda."  He does not identify any defendants in the caption of his complaint; instead, he states that his suit is filed against "Bad Government."  In the body of the complaint itself, however, the plaintiff identifies the following individuals as defendants: (1) Attorney B.F. Jack Lowery, Sr.; (2) Assistant Public Defender William Keele Cather; (3) Assistant District Attorney Brian W. Fuller; (4) Assistant District Attorney Laura E. Bush; (5) Judge Robert P. Hamilton; (6) Judge David Earl Durham; (7) Clerk of Court Linda Neal; (8) Attorney Sam W. Guin, Jr.; (9) Judge John D. Wootten, Jr.; (10) Wilson County Sheriff Terry Ashe; (11) Chief Bryant; (12) Detective Lee Bridges; (13) Deputy John Puckett; (14) Deputy Robinson; (16) Judge James Oscar Bond, Sr.; (16) Community Corrections Officer Mickey Williamson; (17) Community Corrections Officer Carrol Clemmons; (18) "Community Corrections Director"; (19) bail bondsman Danny Tidwell; (19) Marty Smith McLemore; (20)

-2-

Judge John Thomas Gwin; (21) Deputy Glidewell; (22) Wilson County Mayor; (23) Wilson County; (24) the State of Tennessee; (25) Tennessee Attorney General Robert E. Cooper, Jr.; and (26) Governor Bill Haslam. The plaintiff states that he names each of the defendants in his or her individual and official capacity, and he seeks monetary damages as well as various unusual and creative forms of equitable relief.

The lengthy complaint consists mostly of legal argument concerning such matters as judicial and other forms of immunity, and citations to purported legal authority; it contains a relative paucity of factual allegations. Aside from the statements of law and utterly conclusory assertions, the allegations of fact stated in the complaint are as follows:

Defendant Judges Bond and Wootten were personally in receipt of "a crudely drafted writ transferred to their courts by the Davidson County Courts in October of 2004" (Complaint, ECF No. 1, at 10). The plaintiff alleges that these defendants did not respond to said "writs" for which they are liable from October 14, 2004 through July 7, 2007.

Defendant David Earle Durban personally received such a "writ," hand-delivered by the plaintiff on January 9, 2012, "making him liable to plaintiff for everyday since that day that [he refused] to receive this writ from this plaintiff and counting!" (Id. at 10.)

The plaintiff asserts that some of his claims are "nunc pro

-3-

tunc but are still live and valid" because some of his claims concern allegedly continuing offenses, other claims may have been tolled due to lack of notice or because of state interference, and all claims have been tolled for an indefinite period of time due to the plaintiff's mental incompetence resulting from brain trauma incurred in 1999. (*Id.* at 21.) The plaintiff alleges that he was in a motorcycle accident in September 1999 from which he suffered a traumatic head injury as well as hearing loss. He alleges that, as a result of that accident, he had to relearn how to write and spell, "just like starting school all over again from the very beginning." (*Id.* at 22.)

The plaintiff alleges that in January 1999, Sheriff Terry Ashe seized $52,800 cash from the plaintiff's mother's home, along with two vehicles and a quantity of construction tools, all without a search warrant and without notifying the plaintiff of any forfeiture proceedings. The plaintiff alleges this seizure violated state law, as well as his constitutional rights to due process.

The plaintiff alleges that in 1999, Deputy John Puckett conspired with Deputy Glidewell to entrap the plaintiff. This conspiracy somehow involved luring the plaintiff with a "postal package at the post office with pot in it." (*Id.* at 30.) This situation resulted in the plaintiff's being arrested on various charges in 1999 in Macon County, including, based on documents attached to the plaintiff's complaint, charges of aggravated

-4-

burglary, vandalism, and possession of less than a half ounce of marijuana. The plaintiff plead guilty to these charges in March 2000. (Addendum to Complaint, ECF No. 1, at 137-39.) The plaintiff asserts that Judge David Earl Durham knew that the plaintiff was factually innocent of these crimes, and further knew that the plaintiff was "legally innocent due to the fact that the state lacked both territorial and subject-matter of drugs transported in the mail where the arrest transpired on postal property." (Complaint, ECF No. 1, at 30.)

In October 1999, Deputy Puckett allegedly obtained a search warrant based on his own unsubstantiated affidavit made in bad faith, and used it to "invade Plaintiff's home illegally without justifiable cause." (*Id.* at 38.) In the course of the search, Deputy Puckett allegedly destroyed personal property belong to the plaintiff valued at $21,000, in retaliation for "finding his personal information on computer files in an investigation of Wilson County by Plaintiff." (*Id.*)

In late 1999, Wilson County Sheriff Terry Ashe and "many other state officials" met with the plaintiff's retained attorney, Jack Lowery, Sr., and later "coerced" Mr. Lowery into not filing for recovery of personal property worth $75,000 taken from the plaintiff by Sheriff Ashe, into agreeing not to recover $250,000 in the plaintiff's personal injury lawsuit, and into not stating an

exculpatory defense to the "entrapment drug charge." (*Id.* at 42.[1])
The plaintiff claims that Mr. Lowery was paid $44,000 for these
"disservices," and that he later "actively participated applying
his influences upon Judges James Oscar Bond Sr. and John D. Wootten
Jr. to have Plaintiff illegally arrested without probable cause and
falsely imprisoned without any evidence whatsoever." (*Id.*)

On March 30, 2000, the plaintiff "unknowingly" plead guilty,
under duress, to claims that are not specified in the complaint.
(*Id.* at 47.) The record reflects that the plaintiff was sentenced
to probation on those charges. (*See* ECF No. 1, at 137–39 (Macon
Cnty. Crim. Ct. Judgments for Aggravated Burglary, Vandalism,
Marijuana Possession. dated April 14, 2000).)

On June 12, 2000, Community Corrections Officer Carrol
Clemmons allegedly filed a false warrant against the plaintiff for
violation of probation, and Judge Bond, to whom the warrant was
presented, "knowingly verified false arrest warrant without any
evidence whatsoever." (Complaint, ECF No. 1, at 45.) On June 14,
2000, Deputy Robinson and two other unnamed deputies invaded the
plaintiff's home and violently assaulted him, without cause, and
took him into custody. The plaintiff asserts that these actions
were taken because the plaintiff had asked Carrol Clemmons
(apparently his probation officer) for permission to go see
Attorney Virginia Townzen on June 7, 2000, to attempt to rectify

---

[1] The hand-written complaint contains two pages numbered "41." The citations to the complaint herein follow the pagination of the electronically filed document rather than the plaintiff's pagination.

Attorney Lowery's "misdeeds against Plaintiff." (*Id.*)

On June 26, 2000, the plaintiff appeared before Judge John D. Wootten, Jr. On that date, Community Corrections Officer Mickey Williamson testified that the plaintiff's urinalysis was positive for drugs and asked Judge Wootten to revoke the plaintiff's probation. The plaintiff explained to Judge Wootten that he had actually passed the urinalysis, that he had a brand new son, that his mother was dying from lung cancer and also needed his support, and that the plaintiff had a new job that paid well. The plaintiff's probation was nonetheless revoked; the plaintiff claims his probation was revoked based on false evidence.

The plaintiff filed a post-conviction petition in October 2000 raising various defenses to the conviction and sentence. Apparently no action was taken on this petition. After unsuccessful efforts to contact Attorney Lowery, Judge Bond, and Clerk Linda Neal, the plaintiff finally filed a federal habeas petition. Judge Wootten then "sua sponte" initiated post-conviction proceedings "just to subvert federal review," but limited the plaintiff's claims to false imprisonment. (*Id.* at 47.) Judge Wootten claimed that he lacked jurisdiction over his own probation revocation proceedings, and Judge Bond "issued a timebar order on July 5, 2001." (*Id.*) The plaintiff complains that Judge Bond and Clerk Neal never served notice of the "timebar" order on him, in violation of Tennessee law. He also complains that Public Defender William K. Cather never took a first-tier appeal after

-7-

promising to do so.

Although not stated in the complaint, it appears from documents attached to the complaint that the plaintiff was arrested again in February 2011 and charged with arson, setting fire to personal property, aggravated burglary, stalking and harassment. (*See* ECF No. 1, at 150 ("Indictment Information and Discovery").) It is unclear whether the state proceedings relating to those charges are still pending.

In relation to those charges, the plaintiff alleges that Detective Lee Bridges entered his home illegally, without a warrant, on February 16 and 17, 2011 and seized personal property belonging to the plaintiff, falsified his report to indicate he had confiscated illegal narcotics, and planted evidence on the scene. The plaintiff also alleges that defendant Bridges lied on the witness stand at a preliminary hearing on June 16, 2011 regarding evidence found on the scene. (Complaint, ECF No. 1, at 61–62.)

The plaintiff claims that on June 16, 2011, he pointed out to Prosecutor Laura Bush in open court her "criminal responsibility" for defendant Bridges' conduct. (*Id.* at 76.) He further asserts it was Judge Robert Hamilton's duty to "institute . . . disciplinary proceedings" against defendant Bush before the Tennessee Board of Professional Responsibility. (*Id.*) The plaintiff alleges that on the same day, he moved for transcripts and an interlocutory appeal, and the court granted both requests. Defendant Bush later persuaded Judge Hamilton, however, through *ex*

-8-

*parte* communications, to deny his request for transcripts, in violation of state law, in order to "subvert appellate review which would have corrected all charges to the misdemeanor class that they are." (*Id.*) The plaintiff asserts that as an indigent criminal defendant, he was "entitled to a transcript of prior proceedings at the government's expense, if it is reasonably necessary to present an effective defense at a subsequent proceeding." (*Id.* at 76 (citing *United States v. Johnson*, 584 F.2d 148, 157 n.21 (6th Cir. 1983), among others).)

On September 30, 2011, defendant David Earl Durham was informed of defendant Neal and defendant Cather's violations of the plaintiff's post-conviction rights. Despite defendant Cather's refusal to subpoena witnesses and the state's failure to comply with discovery requests, defendant Durham "forc[ed]" counsel upon the plaintiff, even though he wanted to represent himself. (Complaint, ECF No. 1, at 89.) Defendant Durham refused to accept pleadings filed pro se by the plaintiff, allegedly in violation of the plaintiff's constitutional right to represent himself. Attached to the complaint is an order dated March 29, 2012, signed by Judge David Earl Durham for the Criminal Court of Wilson County, Tennessee denying the plaintiff's motion in that court (where the plaintiff was in the posture of defendant in a criminal action) to represent himself. (ECF No. 1, at 169.) Judge Durham explained on the record that, while the United States Supreme Court has recognized a criminal defendant's right to self-representation, Mr.

-9-

Hessmer would not be permitted to represent himself in the case before Judge Durham because the Tennessee Supreme Court had entered an order stating it would not accept further filings from Mr. Hessmer unless submitted through his attorney; and because Mr. Hessmer was still incarcerated and therefore did not have the ability to interview witnesses or issue subpoenas, or to communicate directly with the office of the District Attorney. (*Id.* at 169, 171–72.)

In addition, the plaintiff was told by the Judge Durham during the hearing not to contact any witnesses or potential witnesses if the plaintiff was released on bail. A written order was prepared for entry by Assistant District Attorney Brian Fuller. The plaintiff states that on November 30, 2011, he received notice of the "no-contact" order signed by Judge Durham (a copy of which is attached to the complaint) but that the plaintiff was never properly served with the order. (*See* ECF No. 1, at 151–52.) The plaintiff asserts that Judge Durham's failure to notify him about the non-contact order in court was done intentionally to deny the plaintiff of his constitutional right to object to this order in court.

Regarding the no-contact list and the plaintiff's inability to post bond, it appears that the plaintiff is alleging that his roommate, Ethan Callaghan, was wrongfully included on the list of "potential witnesses" whom the plaintiff was not allowed to contact, which meant that Callaghan could not continue to stay in

-10-

the plaintiff's house and pay rent, thereby depriving the plaintiff of income he otherwise would have had that would have allowed him to raise the money to post bail. The plaintiff also alleges that his attorney, John Michael Ivey, somehow breached his trust by mailing a check to bondsman Danny Tidwell, also a defendant in this action. The plaintiff appears to be alleging that the non-contact order and his ultimate inability to post bond is evidence of a conspiracy among a number of individuals, including Judge Durham, Brian Fuller, Chief Bryant, Marty McLemore and Sam Gwin, Jr., to deprive the plaintiff of his right to be released from jail on a bond while awaiting trial and, somehow, to deprive the plaintiff of his home.

At a hearing on January 9, 2012, the plaintiff informed Judge Durham of this conspiracy, but Judge Durham "denied Plaintiff's rights to file a civil suit, to seek post-conviction relief, to expunge prior convictions, to apply for return of excess property, and twice on writs of habeas corpus," all while he was himself allegedly involved in a conspiracy to steal the plaintiff's property, deprive the plaintiff of his liberty, and to prevent the plaintiff from seeking a "huge personal injury settlement." (Complaint, ECF No. 1, at 93.)

The plaintiff appears to be contesting the facts used to arrest him for arson and the other recent charges. The plaintiff does not state whether he has actually gone to trial and been convicted on these charges, but it appears these charges have not

yet gone to trial. The plaintiff complains that the evidence against him has been exaggerated, and that the state "has used nothing but lies and deceit to deprive Plaintiff of liberty and property without just cause or right and have never had to stand answerable for their . . . constitutionally illegal conduct." (*Id.* at 106.) The plaintiff asserts he has been deprived of the ability to call witnesses in his defense because his public defender refused to subpoena witnesses designated by the plaintiff, and that the state also refused to serve subpoenas on his witnesses. The plaintiff claims he made repeated requests for "known" exculpatory evidence from state Attorney General Robert Cooper, Jr., and from defendants Durham, Fuller and Cather, to no avail. (*Id.* at 108.)

The plaintiff claims Judge Durham is using the plaintiff's public defender, William Cather, to deprive the plaintiff of his rights to conduct pretrial discovery, subpoena witnesses, file pretrial motions, and participate in jury selection, and that defendants Durham and Cather are conspiring to deprive the plaintiff of his rights to a fair trial.

The plaintiff claims that in May 2011, Chief Bryant in the Wilson County jail read and confiscated the plaintiff's legal papers and gave them to defendant Linda Neal, Clerk of the Wilson County Court. The plaintiff alleges that defendant Neal intentionally failed to submit the plaintiff's appellate court brief and sent the Court of Appeals a writ of *coram nobis* instead, which resulted in the plaintiff's being charged fees for filing

-12-

papers he did not actually intend to file. Among other forms of relief, the plaintiff seeks to hold defendant Neal responsible for paying the filing fees the plaintiff owes as a result of Neal's "false filing of Plaintiff's pleadings, her obstruction of Plaintiff's court access and deprivations of Plaintiff's appellate rights." (*Id.* at 127.)

The plaintiff alleges that, while incarcerated, he witnessed a number of assaults at the Wilson County Jail, perpetrated by jail officials against defenseless inmates, without cause, and perpetrated by gang-bangers while jail officials looked on and did nothing to protect the defenseless inmates. The plaintiff alleges he filed numerous grievances about those events, but was told he could not file grievances for actions taken against other inmates. He also filed a grievance against Chief Bryant for the confiscation of his legal papers. The plaintiff alleges he was thereafter transferred from county jail to "maximum security solitary confinement prison" at Riverbend (based on the plaintiff's address) in retaliation for having filed grievances against "Jail Chief Bryant." (Complaint, ECF No. 1, at 121.) Among other relief, the plaintiff requests an order from this court appointing him as "ombudsman" in the county jail, to function as a "middleman between inmates and correctional staff." (*Id.*)

The plaintiff asserts he was told by an informant that the informant had witnessed Sheriff Ashe commit murder. Additionally, the plaintiff has credible information that Sheriff Ashe has

committed kidnapping and has bilked the county and state out of
millions of dollars by buying up property seized by county
officials and selling it at a profit, instead of insuring that the
properties are sold at public auction as required by state law.
The plaintiff alleges that he has brought this information to the
attention of the governor, who has taken no action on it.  Based on
a state statute that authorizes the governor to issue a reward of
$50,000 for information leading to the arrest and conviction of a
felon, Tenn. Code Ann. § 40-8-101, the plaintiff seeks damages from
the governor in the amount of $150,000 based on the governor's
failure to act on the information the plaintiff has brought to his
attention.

Generally, the plaintiff seeks compensatory damages from each
of the defendants named in the complaint.  He also, however, seeks
"equitable" relief from all of them, generally in the form of: (1)
incarceration for "contempt"; (2) criminal prosecution; (3)
requiring the defendants to place advertisements in local
newspapers announcing their alleged misdeeds publicly; (4) ousting
the defendants from public office and enjoining them from taking
public office again; and (5) enjoining the defendants from taking
any part in the plaintiff's criminal prosecution.  With respect to
the various attorney defendants, the plaintiff asks that the
Tennessee Board of Professional Responsibility be ordered to
initiate disbarment proceedings.  He also seeks reinstatement of
his right to appeal and to assert post-conviction claims in state

court.

The complaint is signed under penalty of perjury.  (*Id.* at
133.)

## II. Legal Standards

Under 28 U.S.C. § 1915A, the court must dismiss any portion of a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity that is frivolous or fails to state a claim upon which relief can be granted. The Sixth Circuit has confirmed that "the dismissal standard articulated in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] and [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny under § 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id.* (quoting *Columbia Natural Res., Inc. v. Tatum*,

-16-

58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although the undersigned recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. Analysis and Discussion

### A. Statute of Limitations

Because there is no applicable "statute of limitations governing § 1983 actions, 'federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought.'" *Wolfe v. Perry*, 412 F.3d 707, 713–14 (6th Cir. 2005) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)).  Likewise, "[w]hen the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are 'inconsistent with the federal policy underlying the cause of action under consideration.'"  *Bishop v. Children's Ctr. for Developmental*

-17-

*Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010) (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)). Although the statute of limitations for § 1983 is borrowed from state law, a § 1983 action accrues and the statutory period begins to run according to federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Typically, the statute of limitations for filing an action alleging a constitutional violation begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

The statute of limitations for personal injury actions arising in Tennessee and brought under the federal civil rights statutes is one year. Tenn. Code Ann. § 28-3-104(a)(3); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). This action was filed on June 7, 2012; thus, absent tolling, the plaintiff's claims must have accrued within one year of that date to avoid being barred by the statute of limitations. Many of the plaintiff's claims, however, relate to events that took place in 1999 and 2000—well before June 7, 2011. The plaintiff asserts that the statute of limitations for those claims was tolled as a result of the head injury that he suffered in September 1999.[2]

---

[2] The plaintiff vaguely asserts that other bases for tolling might apply, including that the claims relate to "continuing offenses," or because of "lack of notice" or "state interference." (Complaint, ECF No. 1, at 21.) The plaintiff does not offer any facts to support tolling on these grounds for the claims that accrued in 1999 and 2000.

The Tennessee tolling provision in effect at the time the plaintiff's causes of action accrued in 1999 and 2000 stated in pertinent part as follows:

> If the person entitled to commence an action is, at the time the cause of action accrued, . . . of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action. . . .

Tenn. Code Ann. § 28-1-106 (2000) (emphasis added).[3] The statute does not define "unsound mind," but an early case construing the statute's predecessor applied it to an elderly woman who was found to be "incapable of attending to any business, or of taking care of herself." *Porter v. Porter*, 22 Tenn. (3 Hum.) 586, 589 (1842). More recently, the Tennessee Supreme Court has held that the *Porter v. Porter* standard is "still relevant to determine whether the limitations period for a cause of action is subject to tolling." *Sherrill v. Souder*, 325 S.W.3d 584, 600 (Tenn. 2010).

The plaintiff here appears to be claiming that he was of "unsound mind" as a result of his motorcycle accident in 1999, as he claims he was required to learn to read and write all over again. Assuming that allegation is true, the plaintiff does not indicate when the alleged disability was "removed" for purposes of determining how long his claims were tolled. The undersigned

_____

[3] This provision was amended effective July 1, 2011 to substitute "adjudicated incompetent" for "of unsound mind," and to substitute "after legal rights are restored" for "after the removal of such disability." 2011 Tenn. Pub. Acts, c. 47, § 17. The same amendment also made it clear that it applied only to actions that accrued on or after its effective date. See Tenn. Pub. Acts., c. 47, § 107 ("Nothing in this legislation shall be construed to alter or otherwise affect the eligibility for services or the rights or responsibilities of individuals covered by the provision on the day before the date of enactment of this legislation.").

finds, however, that the plaintiff's history of filing *pro se* legal actions in state and federal courts beginning no later than 2001 clearly demonstrates, as a matter of public record, that the plaintiff, if he was ever "incapable of tending to any business" and therefore "of unsound mind," did not remain under such disability for very long.

Specifically, the undersigned notes that the plaintiff filed at least two *pro se* civil actions in the Tennessee state courts in 2001, as evidenced by reported opinions arising from those cases. According to the Tennessee Court of Appeals' decision in *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn. Ct. App. 2003), the plaintiff here, while he was still incarcerated, filed a *pro se* complaint for divorce from his wife on August 10, 2001. His complaint was dismissed for failure to effect service on his wife, and Mr. Hessmer appealed, raising a fairly sophisticated argument: that because he was *pro se* the trial court should not have dismissed his complaint without first giving him notice of its intent to do so. The appellate court nonetheless affirmed. Also in 2001, Mr. Hessmer filed a *pro se* civil complaint in the Circuit Court for Davidson County, Tennessee against his mother's treating physician and nurse, asserting claims for malpractice and wrongful death arising from his mother's death. The trial court granted summary judgment in favor of the defendants after Mr. Hessmer was unable to obtain affidavits to oppose the defendants' affidavits; Mr. Hessmer appealed, again raising a novel argument  that, because he was

incarcerated, the trial court should have appointed a "special master" to assist him in performing tasks that he, as an imprisoned person, was incapable of performing on his own. The Tennessee Court of Appeals rejected his argument and affirmed summary judgment for the defendants.

In addition to this activity in state court, Mr. Hessmer filed at least three *pro se* habeas corpus petitions and three *pro se* civil actions in the United States District Court for the Middle District of Tennessee between 2001 and 2006. In one of these, filed in 2001, Hessmer named Jack Lowery, Sr., an attorney also named as a defendant in this action. *Hessmer v. Lowery*, 3:01-cv-332 (M.D. Tenn.). In another case, he filed a civil action naming many of the same defendants named here, including Wilson County; Judges Bond, Wootten and Hamilton; Jack Lowery, Sr.; William Cather; Linda Neal; Carrol Clemmons; Mickey Williamson; Terry Ashe; and John Puckett. *Hessmer v. Tennessee*, 3:02-CV-520 (M.D. Tenn.). In a third suit, *Hessmer v. Miranda*, 3:03-CV-1197 (M.D. Tenn.), Mr. Hessmer apparently tried his luck in the federal courts after the Tennessee Court of Appeals affirmed the dismissal of his malpractice and wrongful death claims arising from his mother's death.

In any event, Mr. Hessmer's litigious history clearly demonstrates that the plaintiff had the capacity to pursue his own legal interests, to perform research, draft pleadings, and present his claims to the courts no later than 2001. If Mr. Hessmer was

rendered incapacitated by the head injury resulting from his motorcycle accident in 1999, such disability was evidently "removed," for purposes of the incapacity statute, no later than 2001.

Although the statute of limitations is an affirmative defense, the Court may dismiss claims *sua sponte* on the basis that they are barred by the statute of limitations if the bar is apparent on the face of the complaint. *LAL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995). In this case, the claims that accrued in 1999 and 2000 are clearly time-barred by the one-year statute of limitations. The plaintiff's implication that he was of "unsound mind" is simply not supported by the allegations in the complaint or the plaintiff's litigation history, of which the Court takes judicial notice. Further, while the plaintiff alleges other grounds for tolling, the facts as alleged do not support any other grounds for equitably tolling the statute of limitations.

In sum, even assuming that the plaintiff's claims that accrued in 1999 and 2000 were tolled until 2001, the one-year statute of limitations for those claims began to run as soon as his disability was removed and therefore expired no later than some time in 2002. The undersigned therefore finds that all claims relating to incidents that occurred more than one year prior to the filing of the present complaint are barred by the statute of limitations and are subject to dismissal on that basis. This includes the claims against Judges Bond and Wootten (who are also entitled to judicial

-22-

immunity, as discussed below); Sheriff Terry Ashe; Police Officers Puckett, Glidewell, and Robinson; attorney Jack Lowery, Sr.; probation officers Carrol Clemmons and Mickey Williamson, and their supervisor, the "Community Corrections Director." The claims against each of those defendants should be dismissed as barred by the one-year statute of limitations.

**B. The Judge Defendants**

To the extent that the plaintiff sues various state-court judges in their individual capacities in this action, such claims are barred because the judges are absolutely immune from suit for damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages."). State court judges are even immune from injunctive relief, except in circumstances not relevant here. *See* 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970) ("[F]ederal courts have no authority . . . to direct state courts or their judicial officers in the performance of their duties.").

Moreover, judicial immunity is not overcome by allegations that a judge acted in bad faith or with malice. *Mireles*, 502 U.S. at 11. Rather, a judge performing judicial functions is absolutely

immune from suit even if acting erroneously, corruptly or in excess of jurisdiction. *Id.* at 12-13. Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Id.* at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

The plaintiff here does not allege facts that would permit him to circumvent the absolute immunity accorded state judges under these principles. Even if this court were able to entertain claims for equitable relief against any of the judge defendants, the relief sought—"ouster from office for life," "criminal prosecution," "contempt citations," and ordering the defendants to take out advertisements in local newspapers "confessing [their] actions" (*see, e.g.*, Complaint, ECF No. 1, at 34), the district court lacks authority to provide the relief sought. The claims against defendants Judges Robert P. Hamilton, David Earl Durham, and John Thomas Gwin are subject to dismissal on the grounds that these defendants are entitled to absolute immunity under the circumstances presented here. The claims against Judges John D. Wootten, Jr., and James Oscar Bond, Sr. are barred by the statute of limitations, and alternatively, are subject to dismissal on immunity grounds.

Additionally, to the extent that the plaintiff sues the judges in their official capacities, such claims are tantamount to suits

-24-

against the entities that employ them. Several district courts have concluded that judges in Tennessee are state officials, and not simply officials of the counties and cities in which they serve. *See, e.g.*, *Berry v. Seeley*, No. 2:10-CV-162, 2010 WL 5184883, at *5 (E.D. Tenn. Dec. 15, 2010); *Clark v. Skahan*, No. 07-2294-B/V, 2007 WL 2688553, at *3 (W.D. Tenn. Sept. 11, 2007); *see also* Tenn. Const. Art. VI, § 4 (providing for the election of judges in the state); *id.* at § 7 (establishing judicial compensation); Tenn. Code Ann. § 16-10-101 ("The judicial power of the state is vested in judges of the . . . circuit courts, criminal courts, common law and chancery courts, chancery courts, court of appeals, and the supreme court, and other courts created by law."). To the extent the defendant judges are state officials, the official-capacity claims against them are subject to dismissal on sovereign-immunity grounds under the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *see Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (Eleventh Amendment immunity applies to state officials sued in their official capacity). To the extent the judges could be deemed county officials such that Eleventh Amendment immunity does not attach, the claims against them still fail, because an official capacity claim against a government official must meet the custom or policy requirement for liability stated in *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that "official capacity suits generally

-25-

represent only another way of pleading an action against an entity of which an officer is an agent" and that "[b]ecause the real party in interest in an official-capacity suit . . . is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law" (internal quotation marks and citations omitted)). In this case, the plaintiff does not allege the existence of any county-wide custom or policy that gave rise to his claims against the individual judges. Rather, the plaintiff's claims are all based on particular actions allegedly taken by the individual judges without regard to a custom or policy of the governmental entity for which they work. The plaintiff therefore fails to state an official capacity claim against the defendant judges.

### C. Claims against Clerk of Court Linda Neal

The plaintiff claims that in May 2011, defendant Linda Neal, Clerk of the Wilson County Court, intentionally failed to submit the plaintiff's appellate court brief and instead sent the Court of Appeals a writ of *coram nobis* which the plaintiff apparently drafted but did not intend to file, which resulted in the plaintiff's being charged for filing papers he did not actually file. Among other forms of relief, the plaintiff seeks to hold defendant Neal responsible for paying the filing fees the plaintiff owes as a result of Neal's "false filing of Plaintiff's pleadings, her obstruction of Plaintiff's court access and deprivations of Plaintiff's appellate rights." (Complaint, ECF No. 1, at 127.)

The undersigned notes as an initial matter that the claim against defendant Neal appears to have accrued more than one year prior to the filing of the complaint in June 2012, and that the claim would therefore be barred by the one year statute of limitations. In addition, however, absolute quasi-judicial immunity is extended to non-judicial officers who, like the clerk of court, perform "quasi-judicial" duties. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (holding that probate court administrator was entitled to quasi-judicial immunity for his role in carrying out the orders of the court) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)). "As with absolute judicial immunity, whether an individual is entitled to absolute quasi-judicial immunity is determined by the function of the actor, rather than the constitutionality and reasonableness of his actions. *Smith v. Leis*, 407 F. App'x 918, 929 (6th Cir. 2011) (citing *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) ("Whether an action is judicial depends on the nature and function of the act, not the act itself.")). Accordingly, "a court 'looks to the nature of the function performed, not the identity of the actor who performed it.'" *Bush*, 38 F.3d at 847 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).

The act that the plaintiff alleges gave rise to defendant

Neal's liability involves the filing of court documents he did not intend for her to file, which he claims resulted in the obstruction of his access to the courts and interference with his appellate rights. Because the alleged act—the filing or misfiling of court pleadings—clearly falls within the parameters of defendant Neal's core functions as Clerk of Court and is completely integral to the judicial process, defendant Neal is entitled to absolute quasi-judicial immunity. *Cf. Smith v. Shelby Cnty., Tenn.*, 3 F. App'x 436, 437–38 (6th Cir. 2001) (affirming application of quasi-judicial immunity for a court clerk in a § 1983 action brought *pro se* by a prisoner who alleged that the clerk had violated his rights by delaying adjudication of his petition for post-conviction relief and motion to set aside guilty pleas). The claims against defendant Neal are therefore subject to dismissal on that ground as well.

Additionally, to the extent the plaintiff intends to assert an official capacity claim against defendant Neal, that claim fails, because, again, an official capacity claim against a government official must meet the custom or policy requirement for liability stated in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978). Because the plaintiff does not allege the existence of any county-wide custom or policy that gave rise to his claims against defendant Neal, the complaint fails to state an official capacity claim against her.

**D.  The Claims Against the State and State Officials**

*1.   The Plaintiff Fails to State Claims Against the Governor and Attorney General.*

The § 1983 claims against Governor Haslam and Attorney General Cooper in their individual capacities fail because the plaintiff has not alleged facts showing that either defendant actively engaged in, or was even aware of, acts by other persons that arguably violated the plaintiff's constitutional rights.  *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability.").  Moreover, to the extent the plaintiff claims liability on the part of Governor Haslam on the basis of Tenn. Code Ann. § 40-8-101, which authorizes the governor "to offer a reward leading to the apprehension, arrest and conviction of a person or persons who have committed . . . a criminal offense in this state," such a claim is subject to dismissal on the grounds that it is frivolous.

*2.   The State Prosecutors Are Entitled to Prosecutorial Immunity.*

The individual capacity claims against the Assistant District Attorneys, Laura Bush and Brian Fuller, are barred under common-law principles of absolute prosecutorial immunity insofar as the acts for which the attorneys are sued fall within the scope of their prosecutorial duties.  *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976) (holding that prosecutorial immunity encompasses immunity

-29-

from § 1983 claims).  Moreover, such immunity applies even where the plaintiff alleges that the prosecutor has acted with malice or dishonesty, *id.* at 427, or that the prosecutor knowingly presented false testimony at trial, *id.* at 431 n.34.  Prosecutors also have absolute immunity for appearances at probable cause and grand jury hearings; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings; and preparation of witnesses for trial.  *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003).  The only exception to absolute immunity is that "when a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (quoting *Imbler*, 424 U.S. at 431 n.33).

In this case, the plaintiff alleges that defendant Bush failed to take "criminal responsibility" for the allegedly improper actions of Detective Bridges even after he alerted her to said responsibility in open court, and that she had improper *ex parte* communications with Judge Hamilton to persuade him to deny the plaintiff's motions for a copy of certain transcripts and for an interlocutory appeal.  In the "relief" section of his complaint, the plaintiff implies that Bush brought charges she knew were not supported by sufficient evidence and that she knowingly used perjured testimony and fabricated evidence.  The plaintiff also alleges that Assistant District Attorney Fuller, in drafting and presenting to Judge Hamilton the order barring the plaintiff from

contacting potential witnesses in his case, conspired with other individuals to deprive the plaintiff of his right to be released from jail on bond while awaiting trial, and also somehow to deprive him of his home. He alleges that defendant Fuller failed to respond to his repeated requests for "known" exculpatory evidence in his possession. The plaintiff also alleges that defendant Fuller and the plaintiff's public defender, defendant Cather, conspired to deprive the plaintiff of his right to a fair trial, which is proven, he claims, by the fact that defendant Fuller was filing answers to defense motions days before defendant Cather actually filed the motions.

The actions alleged to have been taken by defendants Bush and Fuller were clearly within the scope of their prosecutorial duties and those of an advocate intimately associated with the judicial process. To the extent that the plaintiff alleges that defendant Fuller was involved in a "conspiracy" to deprive the plaintiff of his rights, the undersigned notes that such allegations are grounded in speculation rather than actual fact, and are not plead with sufficient specificity to state a claim upon which relief may be granted. The claims that defendant Bush was "criminally responsible" for the actions of a police detective are likewise without factual or legal foundation. The plaintiff's primary complaints stem from these defendants' actions in court, including filing or responding to motions in the criminal court, the alleged failure to disclose exculpatory evidence, the countenancing of

-31-

perjured testimony, and the like. Because these actions all fall within the scope of these defendants' prosecutorial duties, these defendants are immune from such claims. The plaintiff's claims against these defendants in their individual capacities should therefore be dismissed.

### 3. *The State Is Entitled to Immunity.*

The plaintiff's claims against the State of Tennessee are subject to dismissal because the state is not a suable entity under § 1983, and in any event is immune from suit pursuant to the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 340–45 (1979). The sovereign immunity protected by the Eleventh Amendment extends to claims for injunctive relief and other forms of equitable relief. *See Lawson v. Shelby Cnty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief."). The only exceptions to a State's immunity are: (1) if the State has consented to suit, or (2) if Congress has properly abrogated a State's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Neither of these exceptions applies to § 1983 suits against the State of Tennessee. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983).

### 4. *The Official-Capacity Claims Are Barred by the*

*Eleventh Amendment.*

When suits are filed against state officials in their official capacities, they "should be treated as suits against the State," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), because in an action against a state officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Therefore, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Generally, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). An exception set forth in *Ex parte Young*, however, allows for "actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." *Thiokol*, 987 F.2d at 381 (describing the holding of *Ex parte Young*, 209 U.S. 123 (1908)). Suits for damages are not permitted against state officials, but "a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . [because] it is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008) (emphasis added) (quotation marks and internal citations omitted).

The *Ex parte Young* exception does not, however, extend to any retroactive relief. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). Indeed, if a plaintiff's complaint against state officials is "based entirely on past acts and not continuing conduct that, if stopped, would provide a remedy to them, . . . it . . . does not come under the doctrine of *Ex parte Young*." *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003) (dismissing plaintiffs' claim for injunctive relief from state officials after determining their complaint was based entirely on past acts).

The *Ex parte Young* exception does not permit official capacity suits against the state official defendants in this case because the plaintiff does not request prospective injunctive or declaratory relief. The plaintiff's allegations against the defendants address only past acts and, allthough he demands equitable relief in various novel forms, the plaintiff does not seek relief from any continuing conduct of these defendants, nor does he seek to compel them to comply with federal law.

Because an official capacity suit is to be treated as a suit against the entity, *Kentucky v. Graham*, 473 U.S. at 166, and none of the sovereign-immunity exceptions applies to the plaintiff's claims, the undersigned concludes that the claims against all state officials named as defendants in their official capacities should be dismissed. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (finding that when a state has not waived its sovereign immunity and defendants are state employees, "[t]o the extent

-34-

[defendants] are sued in their official capacities, the § 1983 claim fails."). Accordingly, the official capacity claims against the Assistant District Attorneys Bush and Fuller, Attorney General Cooper, and Governor Haslam should be dismissed.

### E.  The Claims against the Public Defender

The claims against William Cather, the Assistant Public Defender who represented (and perhaps continues to represent) the plaintiff in underlying criminal proceedings, fail because defendant Cather, in his traditional role as criminal defense counsel to the plaintiff, is not a person acting under color of state law who is subject to suit under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). The plaintiff alleges liability on the part of defendant Cather only in connection with defendant Cather's activities as the plaintiff's appointed criminal defense counsel, so the exceptions the Supreme Court and the Sixth Circuit have recognized under which a public defender may be sued under § 1983 do not apply. *Cf. Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 612 (6th Cir. 2007) (holding public defender and public defender's office were subject to liability under § 1983 where the allegations supported a finding that the challenged action was administrative in nature and also was alleged to be an unconstitutional policy or custom), *cert. denied*, 555 U.S. 813 (2008).

To the extent that defendant Cather is sued in his official capacity, those claims also fail. If he is deemed a state official for purposes of an official-capacity suit, the claims fail because, as set forth above, they are barred under the Eleventh Amendment. If he is not deemed a state official, the claims still fail because the plaintiff has not alleged that he acted pursuant to a custom or policy for which his employer could be liable. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and that "because the real party in interest in an official-capacity suit . . . is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law" (internal quotation marks and citations omitted)). The plaintiff therefore fails to state an official capacity claim against defendant Cather.

**F. Claims against Wilson County and the Mayor of Wilson County**

Although the plaintiff purports to name the "Wilson County Mayor" as a defendant in both his individual and official capacity, the plaintiff does not anywhere in the complaint reference any personal involvement by the Mayor of Wilson County in the actions giving rise to the plaintiff's claims. As stated above, it is well-settled that a civil rights plaintiff must allege the personal involvement of a defendant in order to state a claim against him

-36-

under 42 U.S.C. § 1983.  *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978) (Section 1983 liability cannot be based upon a theory of *respondeat superior*); *Taylor v. Mich. Dep't of Corrs.*, 69 F.3d 76, 81 (6th Cir. 1995) (plaintiff must allege facts showing that defendant participated, approved or knowingly acquiesced in alleged misconduct to establish liability).  Because the plaintiff has not alleged the personal involvement of the Wilson County Mayor, he fails to state a claim against him in his individual capacity.

The plaintiff also purports to state a claim against the Mayor in his official capacity, which is tantamount to a claim against Wilson County itself, as the governmental entity that employs the Mayor.   The complaint also names Wilson County itself as a defendant.   The plaintiff, however, has not alleged the existence of a custom or policy upon which the claims against Wilson County might be premised.   The complaint therefore fails to state a claim against Wilson County or against the Mayor in his official capacity, and these claims are subject to dismissal for failure to state a claim upon which relief may be granted.

### G.   Claims against Bail Bondsman Danny Tidwell

In order to state a claim under § 1983, besides "identify[ing] a right secured by the United States Constitution," the plaintiff must show that this deprivation was caused "by a person acting under color of state law."  *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988).

The color of state law question "is a threshold issue; there is no liability under [§] 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). This element requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). In order for the conduct of a private party be "fairly attributable" to the State, (1) the deprivation must be caused by: (a) the exercise of some right or privilege created by the State, or (b) by a rule of conduct imposed by it or by a person for whom the State is responsible; and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person: (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State. *Id.* at 937–39.

Applying these principles, most courts that have considered the issue have held that bondsmen act under color of state law when they act in concert with police officers or in some other way attain state authority. *See, e.g.*, *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996) ("The majority of federal courts that have addressed the state action issue in the context of bail bondsmen have based their decisions on whether the bondsmen enlisted the assistance of law enforcement officials in arresting their principals."); *Jackson v. Pantazes*, 810 F.2d 426, 429–30 (4th Cir. 1987) (finding state action where bondsman obtained aid from

-38-

a police officer and the relationship between bondsmen and the state was interdependent); *Weaver v. James Bonding Co.*, 442 F. Supp. 2d 1219, 1226 (S.D. Ala. 2006) (labeling the test of whether bail bondsman utilized police assistance in arresting a principal the "litmus test" for finding state action (collecting cases)); *McCoy v. Johnson*, 176 F.R.D. 676, 682 (N.D. Ga. 1997) ("[W]hen bondsmen unilaterally apprehend their principals without any assistance from law enforcement officials, courts have consistently found them not to be state actors." (collecting cases)).

Danny Tidwell, who is apparently a private bail bondsman, is not alleged to have engaged in any action that would justify a conclusion that he was functioning as a state actor. For that reason alone, he is not subject to liability under § 1983. In addition, however, the plaintiff does not allege that Tidwell engaged in any action that would give rise to liability under § 1983. Tidwell is mentioned in the complaint only because the plaintiff's attorney mailed him a check that was meant to serve as a bond or a portion thereof. What happened to that check is not explained in the complaint.

To the extent the plaintiff is attempting to allege a conspiracy among defendant Tidwell and others, including state actors, to deprive him of the ability to be released on a bond, the allegations are insufficiently specific to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007) (recognizing that allegations of conspiracy must be supported by allegations of fact

-39-

that support a "plausible suggestion of conspiracy," not merely a "possible" one).  *See also Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("It is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  The plaintiff's allegations of conspiracy are conclusory and speculative and are insufficient to state a claim, regardless of whether the plaintiff states the violation of a federal right.

In sum, the complaint contains no allegations that give rise to a reasonable inference that defendant Tidwell was a state actor or that he acted in concert with state actors.  Since defendant Tidwell's actions cannot be fairly attributed to the state, the plaintiff's allegations fail to meet the threshold "color of law" requirement, and the claims against defendant Tidwell are subject to dismissal for failure to state claim upon which relief may be granted.

**H.   The Claims Against Other Private Individuals**

The claims against attorney John Michael Ivey, attorney Sam Gwin, and Trustee Marty McLemore, all private individuals, must be dismissed on the basis that these individuals are not plausibly alleged to have engaged in any activity "under color of state law." The plaintiff alleges that defendants Gwin and McLemore were somehow involved in the same conspiracy with Danny Tidwell, along

-40-

with several persons who may be considered to have acted under state law, to deprive the plaintiff of his right to be released from jail on a bond while awaiting trial and to deprive the plaintiff of his home. Other than the plaintiff's completely unsupported conjecture and speculation, he has adduced no proof that there was such a conspiracy. Again, as set forth above, the allegations of a conspiracy are insufficiently specific to state a claim.

The undersigned therefore finds that the complaint fails to state a claim against any of these individuals under § 1983.

## I.   The Claims against Detective Lee Bridges

The plaintiff alleges that Detective Bridges entered his home illegally, without a warrant, on February 16 and 17, 2011, and seized personal property belonging to the plaintiff, falsified his report to indicate that he had confiscated illegal narcotics, planted evidence on the scene, and seized personal property belonging to the plaintiff. The plaintiff also alleges that Detective Bridges lied on the witness stand at a preliminary hearing on June 16, 2011, regarding evidence found on the scene. The plaintiff contends that each of these actions violated the plaintiff's constitutional rights and various state laws. (Id. at 61-62.)

As discussed at length above, the statute of limitations for actions under § 1983 is borrowed from the statute of limitations governing personal injury actions in the state in which the section

1983 action was brought. *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005). In Tennessee, § 1983 actions are limited by the one year statute of limitations found in Tenn. Code Ann. § 28-3-104(a)(3). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). Although state law establishes the statute of limitations for § 1983 actions, federal law controls the issue of when the limitations period accrues and begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Federal law establishes that the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury and the cause of the injury that forms the basis of the claim. *Campbell v. Grand Trunk W.R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

In cases of alleged Fourth Amendment violations brought under § 1983, the statute of limitations begins to run on the date that the alleged constitutional violations occurred. *Wallace*, 549 U.S. at 388. Thus, the statute of limitations challenging an unlawful search and seizure accrues at the time of the search and seizure. *See Harper v. Jackson*, 293 F. App'x 389, 392 n.1 (6th Cir. 2008) ("Harper's claims thus accrued on July 31, 2003, the date of the alleged illegal search and seizure.").

In this case, nearly all the plaintiff's § 1983 claims against Detective Bridges are associated with the searches and seizures that occurred on February 16 and 17, 2011, and the alleged falsification of evidence and planting evidence on the scene that occurred around the same time. The causes of action based on these

-42-

allegations accrued one year after the date the plaintiff knew or should have known of the injuries resulting from the illegal searches and the planting of evidence, and the statute of limitations for claims based on that conduct expired one year later. Although the plaintiff is vague as to when exactly these actions took place, it is clear they occurred around the same time as the searches and seizures that took place in mid-February 2011. In fact, the only action the plaintiff alleges to have been taken by Detective Bridges less than one year prior to the filing of the complaint was the presentation of perjured testimony, which took place on June 16, 2011. Every other allegedly unlawful action taken by Detective Bridges clearly took place more than one year before the plaintiff filed his complaint in this case, on June 7, 2012. Thus, the claims against Detective Bridges based upon the allegedly illegal searches and seizures, the planting of evidence, and the falsification of the police report associated with the searches and seizures are time-barred.

The claim relating to the presentation of perjured testimony on June 16, 2011 is not time-barred, but "[i]t is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983)). Thus, Detective Bridges is completely insulated from liability for any testimony that he provided as a witness at the preliminary hearing, "no matter how

egregious or perjurious that testimony was alleged to have been."
*Spurlock*, 167 F.3d at 1001. The plaintiff's claim related to the
giving of allegedly misleading and false testimony must be
dismissed on the grounds that Detective Bridges is immune from
liability as to that claim.

In sum, the plaintiff fails to state a claim against Detective
Bridges under 42 U.S.C. § 1983 for which relief may be granted and
all claims against him are subject to dismissal.

**J. The Claims Against Chief Bryant**

The plaintiff also sues "Chief Bryant," whom he identifies
only as having formerly been a "chief" of the Wilson County Jail
who is allegedly now serving time in a federal prison. The
plaintiff alleges that he "f[oun]d out that Defendants Fuller,
Gwin, McLemore & Chief Bryant have contacted the bondsmen not to
sign on Plaintiff's bond" (Complaint, ECF No.1, at 92), and
further alleges that Assistant District Attorney Brian Fuller
"conspire[ed] with Defendants Bryant, McLemore and Gwin to deny
Plaintiff liberty on bond." (*Id.* at 93.)

The undersigned concludes that the plaintiff fails to allege
conspiracy with sufficient specificity and therefore fails to state
a claim upon which relief may be granted with regard to the
existence of an alleged conspiracy to prevent him from posting a
bond. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 (2007)
(recognizing that allegations of conspiracy must be supported by
allegations of fact that support a "plausible suggestion of

-44-

conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) ("It is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

The plaintiff also alleges that, while incarcerated, he witnessed a number of assaults at the Wilson County Jail, perpetrated by jail officials against defenseless inmates, without cause, and perpetrated by gang-bangers while jail officials looked on and did nothing to protect the defenseless inmates. (Complaint, ECF No. 1, at 120.) The plaintiff alleges that he filed numerous grievances about those events, but was told he could not file grievances for actions taken against other inmates. He also avers that he filed a grievance against Chief Bryant for his having confiscated the plaintiff's legal papers. The plaintiff alleges he was thereafter transferred from county jail to "maximum security solitary confinement prison" at Riverbend (based on the plaintiff's current address) in retaliation for having filed grievances against "Jail Chief Bryant." (*Id.* at 120.) Among other relief, the plaintiff requests an order from this court appointing him as "ombudsman" in the county jail, to function as a "middleman between inmates and correctional staff." (*Id.* at 121.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v.*

*Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must allege facts showing that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Id.*

In the context of a First Amendment retaliation claim, a prisoner is expected to endure more than the average citizen, *id.* at 389, and enjoys no protected right to remain incarcerated in any specific correctional facility, *Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 358 (6th Cir. 2006). Where the transfer of a prisoner might foreseeably inhibit the prisoner's ability to access the courts, however, or where other aggravating circumstances suggest that the transfer is an adverse action that would deter a person of ordinary firmness from engaging in constitutionally protected conduct, a transfer may rise to the level of unconstitutional retaliation. *See, e.g.*, *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005).

In this case, it appears the plaintiff may be a pretrial detainee who was being held in a county jail pending trial. He alleges that he was subject to a transfer to a maximum-security prison where he was held under much more stringent conditions, in retaliation for having filed grievances against the jail chief. The court is required at this stage to accept the plaintiff's

-46-

non-frivolous allegations as true and to draw all reasonable inferences in the plaintiff's favor. Under the circumstances presented, the undersigned finds that the plaintiff states a colorable claim under 42 U.S.C. § 1983 against Chief Bryant for retaliatory transfer in violation of the plaintiff's constitutional rights. This claim alone should be allowed to proceed, assuming the plaintiff is able to effect service of process on this defendant.

The plaintiff, however, has not stated an official capacity claim against Chief Bryant, because he does not allege the existence of a jail-wide or county-wide policy that resulted in his allegedly retaliatory transfer.

### K.   Potential State Law Claims

To the extent the complaint might be construed to assert state law causes of action, such claims should be dismissed without prejudice. If the plaintiff has any colorable state law claims against any defendant other than Chief Bryant, they are not closely enough related to the one colorable claim in this action to form part of the same case or controversy. The court ,therefore, lacks supplemental jurisdiction over such claims under 28 U.S.C. § 1367.

## IV.  RECOMMENDATION

In light of the foregoing, the undersigned recommends as follows:

> 1.  That the claims against defendants Sheriff Terry Ashe; Police Officers Puckett, Glidewell, and Robinson; attorney Jack Lowery, Sr.; probation officers Carrol

Clemmons and Mickey Williamson, and their supervisor, the "Community Corrections Director," and Judges John D. Wootten, Jr. and James Oscar Bond, Sr., be dismissed with prejudice as barred by the one-year statute of limitations;

2. Alternatively, that the claims against judges John D. Wootten, Jr. and James Oscar Bond, Sr. in their individual capacities be dismissed with prejudice because the judges are entitled to absolute judicial immunity from suit;

3. That the claims against Judges Robert P. Hamilton, David Earl Durham, and John Thomas Gwin in their individual capacities be dismissed with prejudice because the judges are entitled to absolute judicial immunity;

4. That the claims against all the judges in their official capacities be dismissed with prejudice because these claims are tantamount to suits against the state of Tennessee, and the state has sovereign immunity under the Eleventh Amendment;

5. That the individual capacity claim against defendant Linda Neal, Clerk of the Wilson County courts, be dismissed with prejudice because this defendant is entitled to absolute quasi-judicial immunity from suit, and the official capacity claim against her be dismissed for failure to state a claim upon which relief may be granted;

6. That the individual capacity claims against Governor Haslam and Attorney General Cooper be dismissed with prejudice on the basis that the plaintiff fails to allege facts showing that these defendants had any individual involvement in the acts giving rise to the claims in the complaint and because there is no supervisory liability under 42 U.S.C. § 1983;

7. That the individual capacity claims against the state prosecutors, Assistant District Attorneys Laura Bush and Brian Fuller, be dismissed with prejudice because these defendants are entitled to absolute prosecutorial immunity from suit;

8. That the official capacity claims against all the state-actor defendants (Governor Haslam, Attorney General Cooper, Laura Bush, and Brian Fuller) be

-48-

dismissed with prejudice because these claims are tantamount to suits against the state of Tennessee, and the state has sovereign immunity under the Eleventh Amendment;

9. That the claims against the State itself be dismissed with prejudice on the grounds that they are barred by the Eleventh Amendment and because the state is not a suable entity under § 1983;

10. That the individual capacity claims against the Assistant Public Defender, defendant William Cather, be dismissed with prejudice on the basis that the public defender is not a person acting under color of state law who is subject to liability under § 1983, and that the official-capacity claim against the Assistant Public Defender be dismissed without prejudice for failure to state a claim upon which relief may be granted;

11. That the claims against the Wilson County Mayor in his individual capacity be dismissed with prejudice because the plaintiff has not alleged facts showing that the Wilson County Mayor was individually involved in any action giving rise to the claims in his complaint;

12. That the claims against Wilson County and against the Mayor of Wilson County in his official capacity be dismissed with prejudice because the plaintiff has not alleged the existence of a custom or policy upon which the claims against Wilson County might be premised, and the complaint therefore fails state a claim upon which relief may be granted;

13. That the § 1983 claims against defendants Danny Tidwell, John Michael Ivey, Sam Gwin, and Marty McLemore be dismissed with prejudice on the grounds that these defendants are all private individuals who are not state actors and therefore may not be sued under § 1983;

14. That the individual capacity and official capacity claims against Detective Lee Bridges based on actions that took place in or around February 2011 be dismissed with prejudice on the basis that they are barred by the statute of limitations; that the individual capacity claims based on this defendant's allegedly giving perjured testimony in court be dismissed with prejudice on the grounds of absolute immunity; and that the official capacity claims based on the same action be dismissed for failure to state a claim upon which relief

may be granted;

15.   That the conspiracy claims against "Chief Bryant" be dismissed with prejudice on the grounds that the claims are plead with insufficient specificity to state a claim upon which relief may be granted;

16.   That the claim against Chief Bryant in his individual capacity for retaliatory transfer be permitted, at this stage, to proceed, but that the official capacity claim be dismissed with prejudice for failure to state a claim upon which relief may be granted; and

17.   To the extent that the complaint might be construed to assert state law claims, that all such claims be dismissed without prejudice.

The undersigned therefore recommends that the Clerk be instructed to send the plaintiff a service packet (a blank summons and USM 285 form) for defendant Chief Bryant only, and that the plaintiff be directed to complete the service packet for this defendant and return it to the Clerk's Office within 30 days so that process may issue.

The plaintiff has fourteen days from receipt of the Report and Recommendation in which to file any written objections to it with the District Court.   Fed. R. Civ. P. 72(b)(2).   Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Millon*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

E. CLIFTON KNOWLES
United States Magistrate Judge